UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

MICHAEL FISHOFF,

                Plaintiff,

   - against -

COTY INC.,

                Defendant.

------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/17/09

**MEMORANDUM OPINION
AND ORDER**

**09 Civ. 628 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**I.    INTRODUCTION**

        Michael Fishoff is suing Coty Inc. – his former employer – for alleged breach of contract, promissory estoppel, and breaches of the duties of good faith and fair dealing.[1] These claims stem from Fishoff's attempt to exercise options awarded to him in his capacity as Coty's Chief Financial Officer ("CFO"). Fishoff now asks this Court to consider whether or not the exercise of his options was timely. For the reasons discussed below, I find that Fishoff's exercise was timely.

---

[1]    Fishoff also brought common law and federal securities laws fraud claims. Those claims have since been dismissed. *See Fishoff v. Coty Inc.*, No. 09 Civ. 628, 2009 WL 1585769 (S.D.N.Y. June 8, 2009).

## II.    BACKGROUND[2]

### A.    Facts

Fishoff became Coty's CFO on July 1, 2002 and was terminated on

December 11, 2008.[3]  Pursuant to his employment agreement, Fishoff was entitled

to participate in Coty's Long-Term Incentive Plan ("LTIP"), which awarded some

Coty employees with stock options to incentivize future performance.[4]

Under the LTIP, Fishoff received several option grants in the form of

Award Agreements.[5]  Specifically, Fishoff received 50,000 non-qualified stock

options on November 4, 2002, September 15, 2003, September 30, 2004, and

---

[2]     The facts summarized in this section are drawn from the Complaint and are presumed to be true for the purpose of these motions.  For more detailed background, see *id.* at *1-*2.

[3]     *See* Complaint ("Compl.") ¶¶ 8, 21.

[4]     *See* LTIP, Ex. B to Compl. *See also* 6/5/02 Employment Letter from Coty to Fishoff, Ex. A to Compl.

[5]     *See* Compl. ¶ 8.

September 30, 2005.[6]  Those four grants – totaling 200,000 stock options – had all

vested by the fall of 2008.

On Monday, December 1, 2008, Fishoff gave notice to Alexandra

Ebrahim, Coty's Manager of Compensation, that he was exercising all 200,000

vested options.[7]  The LTIP requires that an option exercise must occur on the last

day of the month.[8]  Because the last day of November, 2008 was a Sunday, Coty

recorded the date of exercise as November 28 – a Friday.[9]  Coty subsequently

determined that because Fishoff's options exercise was not a timely November

---

[6]     *See id.* ¶ 10.  *See also* 11/4/02 LTIP Option Award ("11/4/02 Award
Agreement"), Ex. C to Compl.; 9/15/03 LTIP Option Award ("9/15/03 Award
Agreement"), Ex. D to Compl.; 9/30/04 LTIP Option Award (9/30/04 Award
Agreement"), Ex. E to Compl.; 9/30/05 LTIP Option Award ("9/30/05 Award
Agreement"), Ex. F to Compl. (Collectively, the "Award Agreements.").  There
are two boiler-plate options in the Award Agreements.  The first version of the
Award Agreement covered the first two option awards on November 4, 2002 and
September 15, 2003.  The second version of the Award Agreement covered the
next two option awards on September 30, 2004 and September 30, 2005.  The
major difference between the two sets is that the second version has more detailed
vesting requirements.

[7]     *See* Compl. ¶ 17.

[8]     *See id.*

[9]     *See id.* ¶¶ 17, 18.  *See also* 12/2/08 Stock Option Election Form
Confirmation, Ex. L to Compl. (acknowledging that Fishoff's exercise was marked
as occurring on November 28, 2008); FY09 NQ Option Exercises as of November
28, 2008, Ex. M to Compl. (recording Fishoff's exercise as occurring on
November 28, 2008 in Coty's book-keeping program).

3

exercise, it offered Fishoff a cash payment based on a reduced valuation of the shares' market value.[10] It is this action that is the subject of this suit.

### B. The LTIP and Award Agreement

The LTIP provides that "the validity, construction, and effect of the [LTIP] and any rules and regulations relating to [it] and any Award Agreement shall be determined in accordance with the laws of the State of New York."[11] An option is also governed by its respective Award Agreement.[12] However, the Award Agreements are generally subject to the LTIP,[13] with the LTIP trumping any contrary provision in an Award Agreement.[14]

## III. LEGAL STANDARD

"Options are subject to the customary rules of contract interpretation."[15] "Construction of an unambiguous contract is a matter of law,

---

[10]    *See* Compl. ¶¶ 20, 22.

[11]    LTIP § 10(k).

[12]    *See id.* § 6(c)(i).

[13]    *See* Award Agreements at Recitals (incorporating the LTIP as part of the Award Agreement itself).

[14]    *See id.* § 11.

[15]    *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1272 (7th Cir. 1996) (applying New York law) (citing *Meshel v. Phoenix Hosiery Co.*, 17 Misc. 2d 1035, 1040 (Sup. Ct. N.Y. Co. 1957)).

4

and the intention may be gathered from the four corners of the instrument and should be enforced according to its terms."[16] "[T]he aim is a practical interpretation of the expressions of the parties to the end that there be a 'realization of [their] reasonable expectations.'"[17] "Extrapolation of the particularized intent may not usually be by merely culling distinct provisions out of an entire agreement . . . [, rather] the sounder approach is to consider the entirety of the agreement in the context of the parties' relationship and circumstances."[18] Thus, "[t]he rules of construction of contracts require us to adopt an interpretation which gives meaning to every provision of a contract or, in the negative, no provision of a contract should be left without force and effect."[19] A contract is unambiguous if "on its face [it] is reasonably susceptible of only one

---

[16]   *Beal Sav. Bank v. Sommer*, 8 N.Y.3d 318, 324 (2007) (citations omitted).

[17]   *Brown Bros. Elec. Contr., Inc. v. Beam Constr. Corp.*, 41 N.Y.2d 397, 400 (1977) (quoting 1 Arthur L. Corbin, *Corbin on Contracts*, § 1 (rev. ed. 1963)).

[18]   *Matter of Riconda*, 90 N.Y.2d 733, 738 (1997) (citations omitted).

[19]   *Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46 (1956) (citing Restatement (First) of Contracts § 235(c)).

meaning[.]"[20] "When a written agreement is clear and unambiguous on its face,

'extrinsic and parol evidence is not admissible to create an ambiguity.'"[21]

      In New York, the New York State General Construction Law governs

the construction of contractual terms.  Section 25 of the General Construction Law

("GCL") states that, "[w]here a contract by its terms authorizes or requires the

payment of money or performance of a condition on a . . . Sunday . . . unless the

contract expressly or impliedly indicates a different intent, such payment may be

made or condition performed on the next business day.'"[22]  "Because an option is

'a contract to keep an offer open,' the offeree must do something to accept the

offer.  That required 'something' can reasonably be seen as a 'condition' (as that

term is used in [section] 25) that must be performed for the offer to be accepted."[23]

---

[20]    *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002) (citations omitted).

[21]    *Innophos, Inc. v. Rhodia, S.A.*, 38 A.D.3d 368, 369 (1st Dep't 2007) (quoting *Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 379 (1969)).  *Accord Caisse Nationale*, 90 F.3d at 1272 ("Absent ambiguity, option contracts (like all contracts) are governed by the plain meaning of their language.").

[22]    N.Y. Gen. Constr. Law § 25.  Section 25 of the GCL has been applied to option contracts.  *See Caisse Nationale*, 90 F.3d at 1272 (collecting cases).

[23]    *Caisse Nationale*, 90 F.3d 1273 (quoting 1 Samuel Williston, *Williston on Contracts*, § 61A (3d ed. 1961 & supp. 1979) and citing Restatement (Second) of Contracts § 50).

6

## IV.   DISCUSSION

Coty's main contention is that section 3(a) of the Award Agreements allows for the exercise of an option to be made "at any time."[24]  Coty ignores that section 3(a) explicitly qualifies its own applicability with the preface, "[s]ubject to the provisions of the [LTIP] and this Award (including [s]ection 3(e))[.]"[25] Section 3(e) states explicitly, "notwithstanding the foregoing, the Option may be exercised . . . only . . . as of an Exercise Date."[26]  Because the Award Agreements do not define "Exercise Date," one must look to the LTIP,[27] which defines that term as "the last day of any month[.]"[28]  Section 6(d)(ii) of the LTIP qualifies these terms further; it states, "any provision of the [LTIP] or any Award Agreement to the contrary notwithstanding, the provisions of this section [] shall apply . . . . Options becoming exercisable in accordance with their terms may be exercised *only on an Exercise Date*."[29]  Section 25 of the GCL extends that date to Monday

---

[24]     Award Agreements § 3(a).

[25]     *Id.*

[26]     *Id.* § 3(e).

[27]     *See id.* at Recitals ("Capitalized terms not otherwise defined herein shall have the same meanings as in the [LTIP].").

[28]     LTIP § 2.

[29]     *Id.* § 6(d)(ii) (emphasis added).

if the last day of the month is a Sunday.[30] Indeed, in Fishoff's case, because
November 30, 2008 was a Sunday, his December 1, 2008 exercise – a condition
that was otherwise expected to be performed on a Sunday – was a timely
"November" exercise.

Coty's other carefully constructed arguments also fail. *First*, Coty
contends that, according to past practice, notices were accepted at any time.
Despite the fact that this Court asked the parties not to brief Coty's practice and
despite the fact that the LTIP is unambiguous and needs no extrinsic evidence, the
Award Agreement makes clear that notice must be accompanied by the option
exercise itself.[31] Indeed, as just discussed, such an option exercise – the
performance of a condition required under the LTIP – can only take place on an
"Exercise Date" – the last day of the month. *Second*, Coty's contention that its
Board of Directors (the "Board") interpreted the LTIP to provide for different

---

[30]     Other cases with similar facts have also extended contractual
deadlines under section 25 of the GCL. In *Caisse Nationale*, the Seventh Circuit
extended the date for exercise of an option by two days, because the option
contract called for exercise on a Sunday before a legal holiday on Monday. *See* 90
F.3d at 1274. In *Harrison v. Allstate Ins. Co.*, this Court extended the deadline for
a plaintiff to file suit to a Monday because the relevant insurance policy barred any
claim filed after a deadline that ended on a Saturday. *See* No. 98 Civ. 2791, 1999
WL 638243, at *2 (S.D.N.Y. Aug. 18, 1999).

[31]     *See* Award Agreements § 3(b).

8

terms is also inconsequential.  As noted, section 6(d)(ii) of the LTIP applies

notwithstanding "*any* provision" of the LTIP or Award Agreement to the

contrary.[32]

## V.    CONCLUSION

Fishoff's December 1, 2008 option exercise was a timely

"November" exercise.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              July 17, 2009

---

[32]        Indeed, the section granting any superceding or controlling power to
the Committee designated by the Board for purposes of administering the LTIP is
contingent on the consent of the affected option holder. *See* LTIP § 9(b)
(providing that any amendments to the Award Agreements are not effective
"without the consent of the affected Participant, holder or beneficiary").  A
determination by the Board to void an option exercise after the fact does not
reflect any language – explicit or implicit – in the LTIP to disallow a Monday
exercise when a Sunday is the last day of the month.  Therefore, the LTIP is not
exempted from the plain terms of section 25 of the GCL.

## -Appearances-

## For Plaintiff:

C. Evan Stewart, Esq.
Laura E. Neish, Esq.
Zuckerman Spaeder LLP
1540 Broadway, Suite 1604
New York, NY 10036
(212) 704-9600

Charles Matays, Esq.
Matays & Kretschmann
271 Madison Avenue, Suite 705
New York, NY 10016
(212) 213-5000

## For Defendant:

Eric M. Nelson, Esq.
Stephen L. Sheinfeld, Esq.
Lisa M. Sofio, Esq.
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700