**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- X

MICHAEL FISHOFF,

                    Plaintiff,

   - against -

COTY INC.,

                    Defendant.

--------------------------------------------------------- X

**OPINION AND ORDER**

**09 Civ. 628 (SAS)**

USDC SDNY
DOCUMENT
ELECTRON
DOC #
DATE FILED 12/16/09

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Michael Fishoff is suing Coty Inc. – his former employer – for alleged

breach of contract, promissory estoppel, and breaches of the duties of good faith

and fair dealing.[1] These claims stem from Fishoff's attempt to exercise options

---

[1]    Fishoff also originally brought common law and federal securities fraud claims. Those claims have since been dismissed. *See Fishoff v. Coty Inc.*, No. 09 Civ. 628, 2009 WL 1585769 (S.D.N.Y. June 8, 2009). Fishoff is no longer pursuing a separate claim for breaches of the duties of good faith and fair dealing, and makes no reference to this claim in his briefing. *See* Plaintiff's Opposition to Defendant's Motion for Summary Judgment Dismissing Plaintiff's Remaining Claims ("Opp. Mem."). In any event, Fishoff's breaches of the duties of good faith and fair dealing claim is duplicative of his breach of contract claim, and is not cognizable under New York law. *See Harris v. Provident Life and Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002) ("New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled.").

awarded to him in his capacity as Coty's Chief Financial Officer ("CFO").  Coty

now moves for summary judgment on Fishoff's claims for breach of contract and

moves to dismiss Fishoff's promissory estoppel claim.[2]  For the reasons discussed

below, Coty's motion for summary judgment is denied and its motion to dismiss is

granted.

## II.   BACKGROUND

### A.   Facts[3]

---

[2]     Although Coty has moved for summary judgment, Coty treats its
arguments relating to the promissory estoppel claim as a motion to dismiss.  Rather
than directing Coty to withdraw this argument and re-raise it on a motion to
dismiss, I will treat Coty's response to Fishoff's promissory estoppel claim as a
motion to dismiss.  However, Fishoff claims that Coty's motion to dismiss the
promissory estoppel claim is inappropriate as a result of an agreement between the
parties reached during the July 30, 2009 conference to follow a protocol
supposedly approved by this Court during the March 13, 2009 conference.  *See*
Opp. Mem. at 14.  Fishoff fails to point to any specific reference to such an
agreement in the record and Coty disputes that one exists.  *See* Reply
Memorandum in Support of Defendant's Motion for Summary Judgment
Dismissing Plaintiff's Remaining Claims ("Def. Reply") at 9.  Furthermore, Coty
was granted leave to file this dispositive motion without reference to the March 13,
2009 conference and no limitation was placed on the scope of the motion.
Therefore, Coty's motion may proceed.  Fishoff was given the opportunity to
oppose Coty's motion by letter submitted to this Court on December 4, 2009.  *See*
12/4/09 Letter from C. Evan Stewart, Fishoff's counsel ("12/4/09 Fishoff Letter").
Coty replied by letter dated December 8, 2009.  *See* 12/8/09 Letter from Eric
Nelson, Coty's counsel.

[3]     The facts summarized in this section are drawn from Coty's Statement
Pursuant to Local Rule 56.1 ("Coty's 56.1") and Fishoff's Response to
Defendant's Statement Pursuant to Local Rule 56.1 ("Fishoff's 56.1"), as well as
the Complaint and other evidence submitted by the parties.  For more detailed

Fishoff became Coty's CFO on July 1, 2002 and was terminated on December 11, 2008.[4]  Pursuant to his employment agreement, Fishoff was entitled to participate in Coty's Long-Term Incentive Plan ("LTIP"), which awarded some Coty employees with stock options to incentivize future performance ("Participants").[5]

Fishoff received 200,000 Non-Qualified Stock Options ("options") pursuant to the LTIP.[6]  Those options had all vested by the fall of 2008.[7]

On Monday, December 1, 2008, Fishoff gave notice to Alexandra Ebrahim, Coty's Manager of Compensation, that he was exercising all 200,000 vested options.[8]  The LTIP requires that an option exercise must occur on the last day of the month.[9]  Because the last day of November 2008 fell on a Sunday, this Court determined as a matter of law that Fishoff's exercise was a timely November

---

background, see *Fishoff*, 2009 WL 1585769, at *1-*2.

   [4]    *See* Coty's 56.1 ¶ 1; Fishoff's 56.1 ¶ 1.

   [5]    *See* LTIP, Ex. B to Declaration of Eric M. Nelson, attorney for Coty ("Nelson Decl."); Coty's 56.1 ¶ 4; Fishoff's 56.1 ¶ 4.

   [6]    *See* Coty's 56.1 ¶ 5; Fishoff's 56.1 ¶ 5.

   [7]    *See* Coty's 56.1 ¶ 6; Fishoff's 56.1 ¶ 6.

   [8]    *See* Coty's 56.1 ¶ 7; Fishoff's 56.1 ¶ 7.

   [9]    *See* LTIP § 6(d)(ii); LTIP § 2.

exercise.[10]

Coty is a privately owned corporation and its securities are not publicly traded.[11] Coty uses investment banks to place a value on its stock for purposes of the option awards.[12] Prior to December 2008, Coty had consistently used J.P. Morgan for this purpose.[13] In September of 2008, J.P. Morgan pegged Coty's stock at $58 per share.[14]

On December 5, 2008, the Coty Board of Directors ("Board") met in New York City.[15] During this meeting, the Board decided that, in light of deteriorating market conditions, the next option valuation should occur as soon as possible, but no later than January 31, 2009.[16] The Board also decided that option exercises that had occurred since the last Exercise Date, November 30, 2008,

---

[10]     *See Fishoff v. Coty Inc.*, No. 09 Civ. 628, 2009 WL 2146791 (S.D.N.Y. July 19, 2009), *reconsideration denied*, 2009 WL 2431487 (S.D.N.Y. Aug. 6, 2009).

[11]     *See* Complaint ("Compl.") ¶ 13.

[12]     *See id.*

[13]     *See id.*

[14]     *See id.*

[15]     *See* 12/5/08 Minutes of the Board, Ex. A to the Declaration of Jules P. Kaufman, Senior Vice President, General Counsel and Secretary of the Board of Coty.

[16]     *See id.* at 3-4.

4

should be deemed void.[17]   Additionally, the Board voted to amend the LTIP to provide for four valuations each year and to provide window periods for Participants to exercise stock options following each valuation.[18]

At this time, Coty employed Rothschild Inc., a nationally recognized investment bank, to perform a revaluation of its shares.[19]  Rothschild determined the value of Coty's shares to be $31 as of November 30, 2008 – Fishoff's claimed Exercise Date.[20]  This dispute centers on whether the LTIP permits Coty to pay out Fishoff's options at this lower rate, rather than the $58 September valuation.

### B.    The LTIP and Award Agreement

It is undisputed that section 6(d)(ii) of the LTIP applies to Coty's payment for the exercise of Fishoff's stock options.  Section 6(d)(ii) provides:

> Any provision of the Plan or any Award Agreement to the contrary notwithstanding, the provisions of this Section 6(d)(ii) shall apply to Options prior to the IPO.  Prior to the IPO, Options becoming exercisable in accordance with their terms may be exercised only on an Exercise Date.  Upon any valid exercise of an Option or any portion thereof prior to the IPO, the respective Participant shall be entitled to receive only a payment in cash

---

[17]    *See id*. at 4.

[18]    *See id*.

[19]    *See* 1/19/09 Minutes of Meeting of the Board, Ex. F to Nelson Decl. at 2.

[20]    *See id.* at 1.

5

equal to the excess, if any, of the Fair Market Value, *as of the Exercise Date*, of the Shares underlying the Option or portion thereof so exercised over the aggregate exercise price of such Option or portion thereof.  The payment of cash shall be made as promptly as practicable after an exercise in accordance herewith. . . .[21]

The LTIP defines "Fair Market Value" as:

. . .[T]he fair market value of the property or other item being valued, as determined by the [Board] in its sole discretion.  Prior to the IPO, as hereinafter defined, Fair Market Value of the Shares shall be determined on each Valuation Date, by the [Board] using a nationally recognized investment bank (or other comparable valuation expert) selected by the [Board].  Unless otherwise determined by the [Board], there shall be two Valuation Dates in each fiscal year, one at the meeting of the Board in which the Company's financial results for the prior fiscal year are approved

---

[21]     LTIP § 6(d)(ii) (emphasis added).  Put simply, after exercising his or her options, the Participant is entitled to the Fair Market Value of shares minus the original purchase price of the shares.  For example, on November 2, 2002, Fishoff was awarded the option to purchase 50,000 Coty shares at $14 per share.  *See* 11/4/02 NonQualified Stock Option Award, Ex. C to Nelson Decl. § 1.  Assuming that when Fishoff exercised this option – meaning he sold the 50,000 shares back to Coty – the Fair Market Value was $58 dollars per share, Fishoff would have been entitled to a payment equaling the difference between the Fair Market Value – $58 – and the price he originally paid for the shares – $14 – multiplied by the number of shares exercised – 50,000.  In fact, Fishoff received options pursuant to four NonQualified Stock Option Awards, dated November 4, 2002 (50,000 shares at $14 per share), September 15, 2003 (50,000 shares at $17 per share), September 30, 2004 (50,000 shares at $23.25 per share), and September 30, 2005 (50,000 shares at $25.50 per share).  *See* Ex. C. to Nelson Decl.  The "aggregate" – or average – purchase price per share of these four Awards is approximately $19.94.  Therefore, Fishoff claims that he is entitled to $58 per share minus $19.94 per share multiplied by 200,000 shares, or approximately $7,612,000.

and the other approximately six months thereafter. . . .[22]

The LTIP defines "Exercise Date" to mean "the last day of any month, except the month prior to the month in which a Valuation Date falls."[23]  It defines "Valuation Date" to mean "the Initial Valuation Date and any date thereafter on which the [Board] determines Fair Market Value."[24]  An "Award" is defined to mean "any Option," and "Option" means "a Non-Qualified Stock Option."[25]  The LTIP defines "Non-Qualified Stock Option" to mean "a right to purchase Shares from the Company that is granted under Section 6 of the Plan . . . ."[26]

The LTIP contains a number of discretionary provisions.  Section 3(b) provides that "designations, determinations, and other decisions . . .with respect to . . . any Award shall be within the sole discretion of the [Board] [and] may be made *at any time* . . . ."[27]  Section 9(b) provides that the Board "may waive any conditions or rights under, amend any terms of, or alter, suspend, discontinue,

---

[22]     *Id.* § 2.  Although the LTIP uses the term "Committee" in this provision and later provisions, both parties only make reference to the Board, and as such, this Opinion will do the same.

[23]     *Id.*

[24]     *Id.*

[25]     *Id.*

[26]     *Id.*

[27]     LTIP § 3(b) (emphasis added).

cancel or terminate, any Award theretofore granted, prospectively or *retroactively*, consistent with the latest version of the Plan as in effect from time to time . . . ."[28] Section 9(c) authorizes the Board to "make adjustments in the terms and conditions of . . . Awards in recognition of unusual or nonrecurring events . . . affecting the Company . . . or the financial statements of the Company . . . whenever the [Board] determines that such adjustments are appropriate in order to prevent . . . enlargement of the benefits or potential benefits intended to be made available under the Plan."[29]  Section 10(c), under the heading "No Rights to Awards" provides that "[n]o Employee, Participant or other Person shall have any claim to be granted any Award and there is no obligation for uniformity of treatment of Employees, Participants, or holders or beneficiaries of Awards."[30]  The LTIP provides that "the validity, construction, and effect of the [LTIP] and any rules and regulations relating to [it] and any Award Agreement shall be determined in accordance with the laws of the State of New York."[31]

---

[28]     *Id.* § 9(b) (emphasis added).

[29]     *Id.* § 9(c).

[30]     *Id.* § 10(c).

[31]     *Id.* § 10(k).

## III. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[32] "'An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law.'"[33] "[T]he burden of demonstrating that no material fact exists lies with the moving party . . . ."[34]

In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the

---

[32]   Fed. R. Civ. P. 56(c)(2).

[33]   *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 34 (2d Cir. 2008)).

[34]   *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)). *Accord Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

nonmovant's claim."[35]  To do so, the non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts,'"[36] and it "'may not rely on conclusory allegations or unsubstantiated speculation.'"[37]  However, "'all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"[38]

In determining whether a genuine issue of material fact exists, the court must "constru[e] the evidence in the light most favorable to the non-moving party and draw all reasonable inferences" in that party's favor.[39]  However, "[i]t is a settled rule that '[c]redibility assessments, choices between conflicting versions

---

[35]    *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). *Accord In re September 11 Litig.*, No. 21 MC 97, 2007 WL 2332514, at *4 (S.D.N.Y. Aug. 15, 2007) ("Where the nonmoving party bears the burden of proof at trial, the burden on the moving party may be discharged by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.") (quotation marks omitted).

[36]    *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[37]    *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

[38]    *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).

[39]    *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (citing *Anderson*, 477 U.S. at 247-50, 255).

of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'"[40]  Summary judgment is therefore "appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[41]

### B.    Contract Ambiguity

Summary judgment is only appropriate in a contract dispute "when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning."[42]  Summary judgment "may be granted only 'when the intent of the parties can be ascertained from the face of their agreement.'"[43]  A contract must be read as a whole "'to ensure that excessive emphasis is not placed on particular words or phrases.'"[44]  "To the extent the moving party's case hinges on ambiguous contract language, summary

---

[40]    *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)).  *Accord Anderson*, 477 U.S. at 249.

[41]    *Pyke v. Cuomo*, 567 F.3d 74, 76 (2d Cir. 2009).

[42]    *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008).

[43]    *Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005) (quoting *Ruttenberg v. Davidge Data Sys. Corp.*, 215 A.D.2d 191, 192-93 (1st Dep't 1995)).

[44]    *Id*. (quoting *South Road Assocs., LLC v. International Bus. Machs. Corp.*, 4 N.Y.3d 272, 277 (2005)).

11

judgment may be granted only if the ambiguities may be resolved through extrinsic evidence that is itself capable of only one interpretation, or where there is no extrinsic evidence that would support a resolution of these ambiguities in favor of the nonmoving party's case."[45]

"'Whether or not a contract is ambiguous is a question of law to be resolved by the courts.'"[46] A court should make this determination by looking only within the four corners of the document, without reference to outside sources.[47] "Contract language is unambiguous when it has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'"[48] Language is ambiguous if it is "'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages

---

[45]     *Topps Co, Inc*., 526 F.3d at 68.

[46]     *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004) (quoting *W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990)).

[47]     *See JA Apparel Corp. v. Abboud*, 568 F.3d 390, 369 (2d Cir. 2009) (quoting *Kass v. Kass*, 91 N.Y.2d 554, 566 (1998)).

[48]     *Photopaint Techs., LLP v. Smartlens Corp.*, 335 F.3d 152, 160 (2d Cir. 2003) (quotations and citations omitted).

and terminology as generally understood in the particular trade or business.'"[49]

Ambiguity will not be found merely because the parties to a contract urge different interpretations.[50] "New York follows the well established *contra proferentem* principle which requires that 'equivocal contract provisions are generally to be construed against the drafter.'"[51]

### C.     Motion to Dismiss

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "accept as true all of the factual allegations contained in the complaint,"[52] and "draw all reasonable inferences in the plaintiff's favor."[53]  To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility."[54]  A claim is

---

[49]     *JA Apparel Corp.*, 568 F.3d at 369-97 (quoting *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000)).

[50]     *See id.* (citing *Hugo Boss Fashions, Inc. v. Federal Ins. Co.*, 252 F.3d 608, 616 (2d Cir. 2001)).

[51]     *McCarthy v. American Inter. Group, Inc.*, 283 F.3d 121, 124 (2d Cir 2002) (quoting *Revson v. Cinque & Cinque , P.C.*, 221 F.3d 59, 67 (2d Cir. 2000)).

[52]     *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 572 (2007).  *Accord Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 127 (2d Cir. 2009).

[53]     *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

[54]     *See Twombly*, 550 U.S. at 564.

facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[55]  Plausibility "is not akin to a probability requirement;" rather plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[56]

### D.     Promissory Estoppel

A cause of action for promissory estoppel under New York law requires a plaintiff to demonstrate a clear and unambiguous promise, reasonable and foreseeable reliance by the promisee, and unconscionable injury to the relying party as a result of the reliance.[57]

## IV.   DISCUSSION

### A.     Contract Ambiguity

Coty claims that the LTIP unambiguously vests "'sole discretion'" in the Board to determine Fair Market Value as of an Exercise Date "'at any time,'" – including "'retroactively–'" on "'any date,'" and without obligation to treat

---

[55]     *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted).

[56]     *Id*. (quotation marks omitted).

[57]     *See Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000).

Participants "'uniformly.'"[58] Coty also argues that the language of section 6(d)(ii) does not require it to use the September Valuation Date for Fishoff's shares. Coty points to sections of the LTIP that expressly provide for payment based on "the per Share value on *the most recent Valuation Date*,"[59] claiming that the use of this phrase in these sections indicates that the LTIP intended to ascribe a different meaning to section 6(d)(ii). That section provides, in pertinent part, that

> [u]pon any valid exercise of an Option or any portion thereof . . . the respective Participant shall be entitled to receive only a payment in cash equal to the excess, if any, of the Fair Market Value, *as of the Exercise Date*, of the Shares underlying the Option or portion thereof so exercised over the aggregate exercise price of such Option or portion thereof.[60]

As a result, the phrase "as of the Exercise Date" as used in section 6(d)(ii) cannot mean that Fishoff was entitled, without limitation, to the Fair Market Value as of the September Valuation Date, because had such a reading been intended, Coty "knew how to so provide" and would have used the phrase "most recent Valuation

---

[58]    Memorandum in Support of Defendant's Motion for Summary Judgment Dismissing Plaintiff's Remaining Claims ("Def. Mem.") at 17-22 (quoting LTIP §§ 3(b), 9(b), 9(c), and 10(c)).

[59]    LTIP § 6(g)(ii). The LTIP also uses the terminology "the per Share value *as of* the most recent Valuation Date." *Id.* § 6(g)(iv) (emphasis added).

[60]    *Id.* § 6(d)(ii) (emphasis added). *See* Def. Mem. at 15-17.

Date" in section 6(d)(ii).[61]  Conversely, Fishoff contends that the LTIP is

unambiguous in that it confers no discretion on the Board to alter the Fair Market

Value assigned to shares after a valid exercise.[62]

        Both parties' arguments miss the mark.  The issue is not whether it

was within Coty's discretion to retroactively determine the Fair Market Value of

Fishoff's shares *after* a valid exercise.  Rather, the question is whether the LTIP

permits Coty the discretion to apply different Fair Market Values to shares

exercised by different Participants on the same day.  The answer is clear – the

LTIP is unambiguous and does not provide for such discretion.

        Courts are "extremely reluctant to interpret an agreement as impliedly

stating something which the parties have neglected to specifically include."[63]  The

---

[61]    Def. Mem. at 15 (citing *Nippon Express U.S.A. (Illinois), Inc. v. M/V Chang Jiang Bridge*, No. 06 Civ. 694, 2007 WL 4457033, at *6 (S.D.N.Y. Dec. 13, 2007) (noting that the use of different words "indicates an intent to ascribe a separate and distinct meaning")).

[62]    *See* Opp. Mem. at 9-13.

[63]    *Rowe v. Great Atlantic & Pac. Tea Co., Inc.*, 46 N.Y.2d 62, 72 (1978). *Accord Lam v. American Express Co.*, 265 F. Supp. 2d 225, 237 (S.D.N.Y. 2003) ("Discretion to modify or cancel an incentive must . . . be explicit; it will not be implied if there exists no explicit contractual provisions assigning the employer absolute discretion to pay such compensation."); *O'Shea v. Bidcom*, No. 01 Civ. 3855, 2002 WL 1610942, at *3 (S.D.N.Y. July 22, 2002) ("When finding that a specific employment contract vested an employer with the absolute discretion whether to award incentives, courts have relied on clauses that 'unambiguously' vest such power."); *Culver v. Merrill Lynch & Co.*, No. 94 Civ. 8124, 1995 WL

LTIP does not explicitly permit Coty to assign different Fair Market Values to shares that are exercised on the same date. This Court will not read this provision into the LTIP – an act which this Court is not empowered to take and one which would create a risk of arbitrary conduct by the Board.[64]

Coty points to two provisions – sections 3(b) and 10(c) of the LTIP– in support of its position. Section 3(b) provides that it is within the Board's sole discretion to make any decisions regarding the LTIP or any Award and can do so at any time.[65] Section 10(c), under the heading "No Rights to Awards," provides that "[n]o Employee, Participant or other Person shall have any claim to be granted any Award *and* there is no obligation for uniformity of treatment of Employees, Participants, or holders or beneficiaries of Awards."[66]

The discretion conferred on Coty by section 3(b) is extremely broad

---

422203, at *3 (S.D.N.Y. July 17, 1995) (rejecting employer's argument that it had "full discretion as to the amount of [the employee's] compensation" where "[n]othing in the language of [the] compensation plan . . . makes it absolutely clear that [the employer] was to have complete discretion" regarding compensation).

[64]  *Cf. State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 169 (2d Cir. 2004) ("'Where [a] contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion.'" (quoting *Dalton v. Educational Testing Serv.*, 87 N.Y.2d 384, 389 (1995))).

[65]  *See* LTIP § 3(b).

[66]  *Id.* § 10(c) (emphasis added).

and may well permit Coty to retroactively value shares.  In addition, section 10(c)

*does permit* Coty to treat Participants differently with regard to *awarding* stock

options.  For example, under section 10(c), Coty may grant two similarly situated

employees vastly different awards, including the number of stock options, when

the options can be exercised, whether they are revocable or irrevocable, and

limitations on how they may be exercised.  Yet, neither section 10(c) nor section

3(b), nor any other LTIP provision, expressly provides that the Board has the

discretion to value shares exercised on the same date differently.[67]  Construing the

terms of the LTIP against its drafter, the LTIP does not provide Coty with the

discretion to apply different Fair Market Values to Participants who exercise on the

same date.

          This Court previously determined that Fishoff's exercise "was a

---

[67]     *Cf. Namad v. Salomon Inc.*, 74 N.Y.2d 751, 752-53 (1989) (holding
that an employment contract unambiguously vested discretion in employer's
management to determine the amount of bonus compensation to be awarded to
employee where the contract included a "bonus compensation" clause that stated
"[t]he amounts of other compensation and entitlements, if any, including regular
bonuses, special bonuses and stock awards, shall be at the discretion of the
management . . ."); *Foss v. American Tel. & Telegraph Co.*, 605 N.Y.S.2d 143, 144
(3d Dep't 1993) (holding that discretion existed where employer expressly
reserved the right to "reduce, modify, or withhold compensation based on . . .
management determination of special circumstances at any time for any reason
without prior notice").

timely 'November' exercise."[68]  Under the terms of the LTIP, Coty was obligated

to assign to Fishoff's shares the same Fair Market Value assigned to every

Participant who exercised in November.  Had Coty determined that all November

exercisers were entitled to a Fair Market Value of $31, this dispute may never have

arisen.  Fishoff alleges that at least some November exercisers were issued

payments equal to a Fair Market Value of $58 per share minus the amount they

paid for their options, even though Fishoff was offered a payment equal to a Fair

Market Value of only $31 per share minus his purchase price.[69]  While the LTIP

may permit Coty to value its shares at any time, Coty's stock cannot have two Fair

Market Values on the same day.  If this varying treatment occurred, then Coty

breached the terms of the LTIP.  Whether any Participants were awarded payments

of $58 per share minus their respective purchase prices is an area that remains open

for discovery.[70]  Coty's motion for summary judgment on the limited question of

---

[68]     *See Fishoff*, 2009 WL 2146791, *reconsideration denied*, 2009 WL 2431487.

[69]     *See* Compl. ¶ 18.

[70]     Coty argues that evidence regarding Fair Market Value awarded to other November exercisers is inadmissible pursuant to Federal Rule of Civil Procedure 56(e)(2) and immaterial because it constitutes extrinsic evidence without documented support used to interpret an unambiguous contract. *See* Def. Reply at 6. However, the Court limited the scope of the summary judgment motion to the "narrow" question of contract ambiguity and ordered briefing submitted prior to the completion of discovery. 7/30/09 Transcript of Status Conference ("7/30/09

contract interpretation is denied.

## B.    Promissory Estoppel

Fishoff alleges that Coty promised to honor Fishoff's November 2008 exercise of 200,000 vested stock options.[71]  Fishoff contends that he "continued to provide services to Coty" in reliance on Coty's alleged "promise to pay his option exercise."[72] As a result, Fishoff alleges he suffered damages of at least $7.6 million.[73]

As an initial matter, Fishoff's allegation of reasonable and foreseeable

---

Hr'g Tr.") at 8:3, 21:25-22:3.  Coty's treatment of other LTIP Participants is considered only on the questions of whether Coty breached the LTIP and caused injury to Fishoff –issues outside the scope of the instant motion.  Nevertheless, it is worth noting that Coty's representations to this Court – both orally and in its papers – permit a plausible inference that Coty did, indeed, value the shares of all other November exercisers at $58 per share.  *See Def. Mem.* at 22 ("Coty acknowledges that plaintiff was deprived of what both plaintiff and the Board recognized as a 'windfall' other participants were allowed to retain."); 3/13/09 Transcript of Status Conference at 26:19-20 (Eric M. Nelson, defense counsel: "There may have been those [who exercised in November] who received $58 a share."); *Id.* at 34:13-17 (THE COURT: "So are you prepared to stipulate, for example, that the other nine who exercised in November your records show got $58?"  Nelson: "I would be prepared to stipulate to that if that's the case.  It may well be the case."); 7/30/09 Hr'g Tr. at 8:9-14 (Nelson: "There is no dispute over what other people got.").

[71]    *See* Compl. ¶ 39.

[72]    12/4/09 Fishoff Letter (citing Compl. ¶¶ 19, 39).

[73]    *See* Compl. ¶ 41.

reliance is not plausible. Coty could not have reasonably foreseen Fishoff's

reliance because Fishoff was not obligated under the LTIP to continue his

employment with Coty in order to receive payment on exercised options. In other

words, even if Fishoff had terminated his employment with Coty the day after he

exercised his options, Fishoff was entitled to a payment that was equal to the Fair

Market Value of the shares as of his November Exercise Date minus his average

purchase price of those shares. It is not plausible that Fishoff continued his

employment with Coty in reasonable and foreseeable reliance on Coty's alleged

promise.

Even if Fishoff's allegation of reliance was plausible, Fishoff fails to

plead the requisite injury for such a promissory estoppel claim. "Under New York

law, the failure to switch employers does not create a promissory estoppel claim

unless the plaintiff can show that unconscionable injury would result absent

enforcement of the defendant's promise."[74] Fishoff's only alleged injury is that

resulting from Coty's alleged violation of the LTIP through its decision to value

---

[74]     *Oh v. Imagemark, Inc.*, No. 06 Civ. 10187, 2007 WL 2962381, at *4
(S.D.N.Y. Oct. 10, 2007) (citing *Baguer v. Spanish Broadcasting Sys.*, No. 04 Civ.
8393, 2007 WL 2780390, at *6 (S.D.N.Y. Sept. 20, 2007) (collecting cases)).
*Accord Rivera v. City of New York*, 392 F. Supp. 2d 644, 657 (S.D.N.Y. 2005)
("[A]s a matter of law, change of job or residence, by itself, is insufficient to
trigger invocation of the promissory estoppel doctrine.") (quotation marks
omitted).

Fishoff's options at $31 rather than $58.[75]  Unconscionable injury, however, requires something beyond "the expectation damages which flow naturally from the non-performance of the alleged agreement."[76]  Even construing all facts in favor of Fishoff, it is not plausible that Fishoff has suffered unconscionable injury. Coty's motion to dismiss Fishoff's promisory estoppel claim is granted.

## V.   CONCLUSION

For the reasons stated above, Coty's motion for summary judgment on Fishoff's breach of contract claim is denied, and Coty's motion to dismiss Fishoff's promissory estoppel claim is granted.  The Clerk of the Court is directed to close this motion [Docket No. 25].  A conference is scheduled for December 28, 2009, at 4:30 p.m. in Courtroom 15C.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           December 16, 2009

---

[75]     *See* Compl. ¶¶ 34, 41.

[76]     *United Resource Recovery Corp. v. Ramko Venture Management, Inc.*, 584 F. Supp. 2d 645, 658 (S.D.N.Y. 2008).  *Accord Merex A.G. v. Fairchild Weston Systems, Inc.*, 29 F.3d 821, 826 (2d Cir. 1994).

## - **Appearances** -

**For Plaintiff:**

C. Evan Stewart, Esq.
Laura E. Neish, Esq.
Zuckerman Spaeder LLP
1540 Broadway, Suite 1604
New York, NY 10036
(212) 704-9600

Charles Matays, Esq.
Matays & Kretschmann
271 Madison Avenue, Suite 705
New York, NY 10016
(212) 213-5000

**For Defendant:**

Eric M. Nelson, Esq.
Stephen L. Sheinfeld, Esq.
Lisa M. Sofio, Esq.
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700